# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| LEKAN FAWMI,<br>#330622, | )<br>) CIVIL ACTION NO. 9:12-2380-SB-BM<br>)<br>) |
| Petitioner, | )<br>) |
| v. | )<br>) |
| WARDEN LIEBER<br>CORRECTIONAL INSTITUTION, | ) **REPORT AND RECOMMENDATION**<br>)<br>)<br>) |
| Respondent. | ) |

Petitioner, an inmate with the South Carolina Department of Corrections ("SCDC"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed on August 13, 2012.[1]

The Respondent filed a return and motion for summary judgment on December 10, 2012. As the Petitioner is proceeding pro se, a Roseboro order was filed on December 17, 2012, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. After receiving an extension of time, Petitioner filed a memorandum in opposition on January 22, 2012.

This matter is now before the Court for disposition.[2]



---

[1] Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).

[2] This case was automatically referred to the undersigned United States Magistrate Judge for
(continued...)

**Procedural History**

Petitioner was indicted in December 2005 in Horry County for murder [Indictment No. 05-GS-26-4004]. (R.pp. 87-88). Petitioner was represented by T. Kirk Truslow, Esquire, and on September 10, 2008, pled guilty to the lesser included charge of voluntary manslaughter, following which he was sentenced to twenty (20) years imprisonment. (R.pp. 1-33). Petitioner did not appeal his conviction or sentence.

On August 25, 2009, Petitioner filed an application for post-conviction relief ("APCR") in state circuit court. Fawmi v. State of South Carolina, No. 09-CP-26-8279. (R.pp. 34-40). Petitioner raised the following issues in his APCR:

**Ground One**: Ineffective Assistance of Counsel for failing to file an appeal.

**Ground Two**: Ineffective Assistance of Counsel.

**Ground Three:** Prosecutorial misconduct.

**Ground Four**: Violation of guaranteed Constitutional right of law.

(R.pp. 35-36).

Petitioner was represented in his APCR by Paul Archer, Esquire, and an evidentiary hearing was held on Petitioner's application on August 23, 2010. (R.pp. 44-78).[3] On October 18, 2010, the PCR judge entered an order dated October 12, 2010, denying Petitioner's APCR in its entirety. (R.pp. 79-86).

Petitioner timely filed a notice of appeal. Petitioner was represented on appeal by

---

[2](...continued)
all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3] At his PCR hearing, Petitioner withdrew his claims of prosecutorial misconduct and as well as any claim for judicial misconduct. (R.p. 77). Petitioner also did not present any evidence to the Court regarding his alleged desire to pursue a direct appeal. See generally (R.pp. 44-77, 85 [n. 2]).



2

Wanda H. Carter, Deputy Chief Appellate Defender with the South Carolina Commission on Indigent Defense, who filed a <u>Johnson</u>[4] petition seeking to be relieved and raising the following issue:

Trial counsel erred in failing to explain fully sentencing consequences in the case.

<u>See</u> Petition, p. 2. [Court Docket No. 18-4].

On July 30, 2012, the South Carolina Supreme Court denied the petition and granted counsel's request to be relieved. <u>See</u> <u>Fawmi v. State</u>, order filed July 30, 2012. [Court Docket No. 18-7]. The Remittitur was issued on August 17, 2012. <u>See</u> Court Docket No. 18-8.

In his Petition for a writ of habeas corpus filed in this United States District Court, Petitioner raises the following grounds:

**Ground One:** Ineffective assistance of plea counsel.

<u>Supporting Facts</u>: Counsel failed to advise Petitioner on his investigation of the case and the evidence; on possible defenses; for allowing Petitioner to enter a guilty plea while not competent to do so; and for failing to explain fully the sentencing consequences in the case.

<u>See</u> <u>Petition</u>, p. 6.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case; <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear

---

[4] <u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1998); <u>see also</u> <u>Anders v. California</u>, 386 U.S. 738, 744 (1967).



failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

Initially, it is readily apparent that Petitioner raises several issues in his Petition and/or memorandum in opposition to Respondent's motion for summary judgment[5] which were not presented in his state court proceedings. Specifically, the following allegations now discussed by the Petitioner were not previously raised in his state court proceedings: 1) that he only gave affirmative answers during his guilty plea because his counsel told him to do so; 2) that he was never told that he could challenge the voluntariness of his statement to the police; and 3) that he should have had an interpreter at his guilty plea and that his PCR counsel acted improperly and demanded certain payments.

Petitioner did not file a motion for the PCR court to reconsider its order even though such a motion was necessary if he wanted to assert or preserve these claims. Al-Shabazz v. State, 527 S.E.2d 742, 747 (S.C. 2000)[A "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order."] (citing Pruitt v. State, 423 S.E.2d 127, 128 n. 2 (S.C. 1992)[issue must be raised and ruled on by the PCR judge in order to be preserved for review]; Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007)["Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review . . . ."]; Humbert v. State,

---

[5]It is arguable that Petitioner has attempted to expand on the claims in his Petition by arguing additional claims of ineffective assistance of counsel in his memorandum that are not actually presented in the Petition itself. However, in light of Plaintiff's pro se status and this Court's obligation to liberally construe pro se pleadings, the undersigned has addressed all of the issues discussed by the Petitioner in his filings.



548 S.E.2d 862, 865 (S.C. 2001); Plyler, 424 S.E.2d at 478-480 [issue must be both raised to and ruled upon by PCR judge to be preserved for appellate review]. The PCR judge specifically pointed out this requirement in his Order. (R.p. 85). See also Rule 59(e), SCRCP [providing avenue for any party to move to alter or amend a judgment if they believe necessary matters not addressed in original order]; Primus v. Padula, 555 F.Supp.2d 596, 611 (D.S.C. 2008); Smith v. Warden of Broad River Correctional Inst., No. 07-327, 2008 WL 906697 at * 1 n. 1 (D.S.C. Mar. 31, 2008); McCullough v. Bazzle, No. 06-1299, 2007 WL 949600 at * 3 (D.S.C. Mar. 27, 2007)(citing Al-Shabazz, 577 S.E.2d at 747).

Since Petitioner did not make a post-trial motion to request that these issues be addressed, these issues were not properly preserved in Petitioner's APCR and state court proceedings.[6] See Cudd v. Ozmint, No. 08-2421, 2009 WL 3157305 at * 3 (D.S.C. Sept. 25, 2009)[Finding that although Petitioner attempted to raise the issue in his PCR appeal, the issue was procedurally barred where PCR court did not rule on the issue and Petitioner's motion to alter or amend did not include any request for a ruling in regard to the issue]; White v. Burtt, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing Pruitt v. State, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); cf. Miller v. Padula, No. 07-3149, 2008 WL 1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008). Further, because Petitioner did not properly raise and preserve these issues in his APCR and

---

[6]The Fourth Circuit has held that, prior to the decision of the South Carolina Supreme Court in Marlar v. South Carolina, 653 S.E.2d 266, 267 (S.C. 2007), South Carolina courts had not consistently applied the procedural bar based on a PCR applicant's failure to file a Rule 59(e) motion. See Bostick v. Stevenson, 589 F.3d 160, 164-165 (4th Cir. 2009). Here, however, the PCR court's order was dated October 12, 2010, well after the South Carolina Supreme Court's decision in Marlar in November of 2007. Therefore, Petitioner's failure to file a Rule 59(e) motion regarding these issues bar these claims. See Marlar v. Warden, Tyger River Correctional Institution, 432 Fed.Appx. 182, 186-188 (4th Cir. May 25, 2011).



state court proceedings, they are barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue these issues, they are fully exhausted. Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999), cert. denied, 528 U.S. 959 (1999)["In order to avoid procedural default, the 'substance' of [the] claim must have been 'fairly presented' in state court . . . . That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.](quoting Townes v. Murray, 68 F.3d 840, 846 (4th Cir. 1995)(quoting Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994)); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, because these issues were not properly pursued and exhausted by the Petitioner in the state court, federal habeas review of these claims is now precluded absent a showing



of cause and prejudice, or actual innocence.  Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

Here, Petitioner appears to argue that, to the extent that any of his issues are procedurally defaulted, he should still be allowed to pursue them because any default is due to ineffective assistance of his PCR counsel.  The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default."  Murray, 477 U.S. at 488; see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)("[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"); Smith v. Dixon, 14 F.3d 956, 973 (4th Cir. 1994)(en banc).

However, Petitioner's assertion that his PCR counsel was ineffective for failing to pursue or properly preserve these claims in his APCR does not provide Petitioner relief.  While ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation; Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996); and ineffective assistance of *PCR counsel* does not amount to an independent constitutional violation and is not therefore "cause" for a procedural default.  Murray v. Giarratano, 492 U.S. 1-7, 13 (1989) [O'Connor, J., concurring] [



7

"[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; Mackall v. Angelone, 131 F.3d 442, 447-449 (4th Cir. 1997); Ortiz, 149 F.3d at 932; Pollard v. Delo, 28 F.3d 887, 888 (8th Cir. 1994); Lamp v. State of Iowa, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); Parkhurst v. Shillinger, 128 F.3d 1366, 1371 (10th Cir. 1997); Williams v. Chrans, 945 F.2d 926, 932 (7th Cir. 1992); Gilliam v. Simms, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998). Therefore, Petitioner has failed to show cause for his procedural default on these issues. Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."].

Finally, Petitioner also argues that he can overcome the procedural bar in this case because he is actually innocent. However, cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998); see also Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004). Petitioner has failed to present any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence on the criminal charge for which he was convicted. See Schlup v. Delo, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; Doe, 391 F.3d at 161 (quoting Schlup for the evidentiary standard



8

required for a court to consider an actual innocence claim). Further, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if this claim is not considered. Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing Murray v. Carrier, 477 U.S. at 496); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla. 1995).

Therefore, these claims are procedurally barred from consideration by this Court, and must be dismissed. Id.; see 28 U.S.C. § 2254.

## II.

Respondent does not dispute for purposes of summary judgment that Petitioner raised his remaining claims of ineffective assistance of counsel with respect to counsel's failure to advise Petitioner on possible defenses, getting him to plead guilty when he wanted to go to trial, counsel's allowing of Petitioner to enter a guilty plea when he was not competent to do so and when he lacked criminal responsibility, and counsel's failure to fully explain the sentencing consequences,[7] in his APCR, where he had the burden of proving the allegations in his petition. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986). The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Fawmi v. South Carolina, No. 09-CP-26-8279.

Specifically, the PCR judge found that: 1) Petitioner testified that he believed he was not competent to stand trial at the time he pled guilty; 2) Petitioner testified that he was severely

---

[7]Petitioner asserts that he thought he would receive a sentence of approximately ten (10) years and be immediately deported to Nigeria. See Memorandum in Opposition to Summary Judgment, p. 9.



9

depressed after this crime occurred, and that the jail had been denying him his medication; 3) Petitioner also testified that he believed he was not in his right mind at the time of the crime and did not know right from wrong; 4) Petitioner acknowledged that he was evaluated by the Department of Mental Health two times prior to his plea, and was also independently evaluated at the request of his plea attorney; 5) Petitioner also acknowledged that he had recently been evaluated again as part of his PCR case; 6) Petitioner stated that he never meant to hurt his wife (the murder victim), he did not want to plead guilty, and that he instead wanted a trial; 7) Petitioner also testified, however, that his counsel, Mr. Truslow, was a "nice man" and that he had no complaints about him; 8) Petitioner's counsel testified that he had been practicing law for seventeen (17) years; 9) that Petitioner gave incriminating videotaped statements to the police indicating that he "did it" (committed the crime); 10) Petitioner's counsel testified that while Petitioner was out on bond, that he [counsel] met with him numerous times at his office; 11) Petitioner's counsel testified that they discussed several possible avenues of defense, including self-defense, voluntary manslaughter, and mental state issues; 12) counsel believed that if they went to trial, the best possible scenario would be a verdict of guilty on voluntary manslaughter and that he did not believe that self-defense would be successful, primarily due to the number of times (14 or 15) that Petitioner had stabbed his wife; 13) counsel testified that Petitioner was very remorseful and tearful concerning his wife's death, and found it difficult to talk about the facts of the case; 14) in February 2007, Petitioner was evaluated by the Department of Mental Health and found to have major depressive issues; 15) in the first evaluation, the doctors found him to be incompetent due to the major depression, but they concluded that he would likely be restored with treatment; 16) that following treatment, Petitioner was re-evaluated in December of 2007 and found to be competent; 17) that counsel also had Petitioner independently evaluated by a physician who reached the same conclusion - that Petitioner was competent; 18) at



some point after competency was restored, Petitioner and his counsel began discussing the possibility of entering a plea; 19) counsel testified that although Petitioner is from Nigeria and initially had some difficulty understanding the nuances of the American legal system, counsel persisted on the topic until he was certain that Petitioner understood what they were discussing; 20) counsel testified that they discussed the benefits and drawbacks of pleading guilty as opposed to going to trial; 21) counsel advised Petitioner that in light of the evidence and circumstances of the case, he believed that a plea to voluntary manslaughter was the most reasonable strategy and would be in Petitioner's best interest; 22) counsel thought that Petitioner might stand a chance of receiving less than the maximum sentence of thirty (30) years since he had no criminal record and was extremely remorseful; 23) however, Petitioner did understand that he was facing up to thirty (30) years; 24) Petitioner was able to discuss the issue of pleading guilty with his family - in particular with his brother; 25) Petitioner's brother encouraged him to take the plea; 26) counsel testified that, ultimately, Petitioner made his own voluntary and informed decision to plead guilty to voluntary manslaughter; 27) counsel stated that he had no question that Petitioner knew what he was doing and what was going on at the guilty plea; 28) counsel stated that he was pleasantly surprised when the trial judge handed down only a twenty (20) year sentence; 29) that there was no evidence of ineffective assistance of counsel with respect to counsel's advice and performance during this case; 30) counsel investigated the case and reviewed the evidence with the Petitioner; 31) they discussed all possible avenues of defense; 32) when counsel realized there were possible mental health issues, Petitioner was evaluated and his major depression was treated and competency was restored; 33) there was no credible and convincing evidence that Petitioner was not competent at the time of the plea, or that he was insane at the time of the crime; 34) this finding was supported by the Petitioner's February 2010 evaluation, which was part of the record; 35) Petitioner failed to prove that his plea was unknowing or involuntary; 36)



counsel's testimony supports that Petitioner fully understood what he was doing when he pled guilty; 37) further, the plea court's colloquy with the Petitioner supports that the plea was knowing and voluntary, and counsel had no reason to file an appeal following the entry of plea; 38) that Petitioner did not discuss his allegation of failure to file an appeal and, accordingly, there is no evidence that he ever asked his counsel to file one; and 39) counsel was not ineffective. (R.pp. 81-85).

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Nevertheless, since these ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000). Bell v. Jarvis, supra; see also Evans,



220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694.  In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial.  Further, where a guilty plea is involved, in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). Here, after careful review of the record and the arguments presented, the undersigned finds and concludes that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under this standard, or that his plea was unknowing or involuntary. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].



13

Petitioner testified at his PCR hearing that he was not competent at the time of his plea. (R.p. 48). However, while Petitioner testified that he had been examined and initially found to be not competent, the testimony further established that he was thereafter examined two more times before his guilty plea and found to be competent. (R.p. 50). Petitioner was also evaluated again prior to his PCR hearing and again found to be competent. (R.pp. 50-51). Petitioner also testified that he did not want to plead guilty and that instead he wanted to go to trial, and that he was told that he was going to receive a different amount of time than what he received. (R.pp. 53-54). However, the record reflects that Petitioner acknowledged at his plea that he understood he could be sentenced to up to thirty (30) years; that no one had threatened, forced, or coerced him into pleading to the charge; that his plea to manslaughter was being freely, voluntarily, and intelligently made; and that he understood what he was doing with regard to pleading guilty to manslaughter. (R.pp. 18-19). The record further reflects that the plea judge then asked Petitioner to confirm again that he understood that he could be sentenced up to thirty (30) years, which Petitioner affirmed. (R.p. 19). Petitioner then also told the plea judge that he was satisfied with his counsel, that his trial counsel had done everything that he had asked him to do, called all the witnesses that Petitioner wanted him to contact, and that he did not have any questions about what the plea judge was saying to him. (R.p. 20).

The record reflects that the plea judge also inquired of counsel as to whether he had explained all of Petitioner's constitutional rights to him and believed that Petitioner understood them, to which counsel affirmatively replied, and that the plea judge also himself explained Petitioner's rights to him, including the right to a trial by jury, and that Petitioner was waiving those rights by pleading guilty, following which Petitioner stated that he understood that he was giving up those rights. (R.pp. 16-17).

Counsel testified at the PCR hearing that he had been practicing law for seventeen (17)



14

years at the time of Petitioner's plea; that a cam video on the officer's car, after they found Petitioner hiding after his wife had been stabbed, recorded Petitioner's statements concerning what happened; that he met with Petitioner on numerous times to discuss the case; that they were planning on the case going to trial until the State started discussing the possibility of a voluntary manslaughter plea; and that he advised Petitioner of the possible penalties he was facing on both murder and voluntary manslaughter. (R.pp. 58-60). Petitioner's counsel also testified that Petitioner was examined three times to determine his mental state, that he discussed possible defenses with Petitioner, that he advised Petitioner that he could receive up to thirty (30) years on the change of voluntary manslaughter, and that he discussed the benefits and drawbacks of the plea with Petitioner. (R.pp. 61-64). Counsel also testified that he discussed the possibility of arguing self defense, but that since Petitioner's wife was stabbed fourteen or fifteen times, that defense would have had problems. (R.pp. 69-70). Counsel testified that he didn't have any question that Petitioner knew what was going on at the plea hearing, and that Petitioner gave the Court very direct answers and was very clear in speaking to the Court about apologizing and in what he said to the Court. (R.pp. 72-73). Counsel stated that there was never any point in the plea where he didn't think Petitioner knew what was going on. (R.p. 73). Counsel testified that he explained to Petitioner the sentence that he was facing, and that while Petitioner may have thought that the sentence was out of bounds with what he would have faced in Nigeria, he had explained to Petitioner the penalties that he faced in this country for the crime. (R.pp. 74-75). In fact, counsel testified that he was pleasantly surprised when the judge handed down a twenty (20) year sentence. (R.p. 75).

Petitioner argues in his memorandum that while he was evaluated to determine his competency, his counsel was ineffective because he was never evaluated to determine if he had lacked the ability to be criminally responsible for the crime due to his mental state. <u>See</u>



15

Memorandum in Opposition to Summary Judgment, p. 8. However, Petitioner offered no evidence to the PCR court or in this proceeding to show that he lacked the necessary ability to be held criminally responsible for his actions. The PCR court found that after Petitioner was initially found to be incompetent due to major depression, his depression was treated and he was subsequently evaluated twice prior to his plea and found competent both times, and that Petitioner was also found to be competent pursuant to an evaluation prior to his PCR hearing. (R.p. 84). In fact, the competency evaluation performed before the PCR proceeding addressed the issue of criminal responsibility and found Petitioner "responsible."; see Court Docket No. 18-10, p. 1, and the PCR court also found that there was no evidence that Petitioner was insane at the time of the crime. (R.p. 84). In sum, the record shows that Petitioner was repeatedly examined and found to be competent including by an independent evaluation which his counsel requested, and Petitioner has offered no evidence to show how any further action on behalf of his counsel would have resulted in any different findings. To the contrary, other than his own unsupported speculation, which is contradicted by the record, Petitioner has offered no evidence to show that he was incompetent or insane. See Jeter v. State, 417 S.E.2d 594, 596 (S.C.1992)[Petitioner has burden of proof to show he was incompetent at time of plea].

        The United States Supreme Court has ruled that "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Here, the record reflects that Petitioner affirmed to the judge at his guilty plea that he



took his wife's life, stabbed her repeatedly with a knife, and that he was guilty of the charge. (R.p. 18). Petitioner also affirmed to the judge that he understood he could receive up to thirty (30) years, that he was entitled to a jury trial, that the State would have to prove its case beyond a reasonable doubt, that he would not have to testify and that fact could not be used against him, that no one had threatened or forced him to plead guilty, and that he was pleading freely, intelligently, and voluntarily. (R.p. 19). Petitioner further represented to the plea judge that he was satisfied with his counsel's services, that counsel had done everything that he asked him to do, that his counsel had called all the witnesses that he wanted, and that he did not have any questions. (R.pp. 19-20).

Statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167, 171 (4th Cir. 1981). Petitioner has provided no evidence to show ineffective assistance of counsel in his case; see discussion, supra; and has further failed to provide the Court with any evidence to show that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court. Petitioner has therefore failed to present evidence sufficient to show that the state court's rejection of these claims was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Bell v. Jarvis, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. Petitioner's claims are without merit and should be dismissed.



## **Conclusion**

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 18, 2013
Charleston, South Carolina



18

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk<br/>
United States District Court<br/>
Post Office Box 835<br/>
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

